IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANDRA DE RUIZ,

    Plaintiff,

  v.

COURTYARD MANAGEMENT CORP., MARRIOTT INTERNATIONAL ADMINISTRATIVE SERVICES, INC., MARRIOTT INTERNATIONAL, INC., DIANNA TEVES, and DOES 1-20,

    Defendants.

No. C 06-03198 WHA

**ORDER GRANTING MOTION TO REMAND**

### INTRODUCTION

In this tort action for intentional infliction of emotional distress, plaintiff seeks to remand the matter to state court. The central issue is whether plaintiff Sandra De Ruiz has a possible claim against defendant Dianna Teves, whose presence destroys complete diversity and the Court's subject-matter jurisdiction. Defendants argue that plaintiff fraudulently joined Teves. Because plaintiff's claim against Teves is not clearly preempted by the California Workers' Compensation Act, and because defendants have not met their burden in demonstrating that plaintiff has no chance of succeeding in her claim against Teves, plaintiff's motion to remand is **GRANTED**.

**STATEMENT**

Plaintiff Sandra De Ruiz is a California citizen. From September 21, 2005, through February 1, 2006, De Ruiz was an employee of the Foster City Marriott Courtyard in San Mateo County. While employed at the Courtyard hotel, De Ruiz alleges that she and other housekeeping attendants were frequently exposed to biohazardous wastes, "such as vomit or feces left on guest room linens or contaminated rags used to clean up guest bathrooms," in violation of the California Occupational Safety and Health regulations. In particular, De Ruiz complains that defendants failed to provide employees with biohazard waste-containment bags for the storage and transportation of contaminated laundry, as required by Title 8, Section 5193 of the California Code of Regulations. De Ruiz also complains that defendants routinely failed to separate contaminated laundry from regular laundry, and that employees were not given work breaks according to the Code (Compl. 3).

De Ruiz alleges that when she raised her concerns to her supervisor regarding the improper handling of biohazardous materials and the lack of rest breaks on days when she worked an eight-hour schedule, general manager and defendant Dianna Teves responded that the hotel's employees "already take too many breaks." Plaintiff also alleges that she was issued two disciplinary actions for minor infractions and a sharp reduction in scheduled works hours within days of her first complaint. When plaintiff confronted Teves about her concerns and suspicion of retaliation, plaintiff alleges that Teves issued her two additional disciplinary actions for other minor infractions and suspended her pending further review. Finally, De Ruiz alleges that the stated reason for her termination, her failure to appear at a meeting scheduled with Teves (regarding her disciplinary actions), was premised upon Teves' misrepresentation that the meeting had been scheduled, when in fact it had not (Compl. 4, 6).

Plaintiff filed her original complaint against all defendants on April 12, 2006, in the Superior Court of California for San Mateo County. It is undisputed that all corporate defendants were incorporated in Delaware, with their principal place of business in Maryland. Teves, like De Ruiz, is a California resident. De Ruiz's complaint includes multiple charges against the corporate defendants and one claim for intentional infliction of emotional distress

against all defendants. The IIED claim is the only claim against Teves (Compl. 8–9). Defendants petitioned for removal on May 12, 2006. On June 9, 2006, plaintiff moved for remand.

**ANALYSIS**

A defendant may remove a civil action that alleges claims against a non-diverse defendant when a claim lies against that defendant. *McCabe v. Gen'l Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according the *settled* rules of the state, the joinder of the resident defendant is fraudulent." *Ibid*. (emphasis added). Accordingly, the "fraudulently-joined" defendant is dismissed and disregarded for diversity purposes. The removing party bears the burden of establishing fraudulent joinder, and any doubt as to removability shall be resolved in favor of remand. *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992). "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is any possibility that they may do so." *Cont'l Ins. Co.*, No. C 02-3936, 2002 WL 31414315, at *6 (N.D. Cal. Oct. 23, 2002).

Defendants claim that Teves was fraudulently joined. *First*, they argue that plaintiff's IIED claim against Teves is barred because it is subject to the "exclusive remedy provisions of the California Workers' Compensation Act" (Opp. 4). *Second*, defendants assert that the allegations against Teves do not state a valid claim. As a result, defendants contend that Teves was only joined as a sham defendant in order to destroy diversity, and that complete diversity between the parties exists.

**1.    CALIFORNIA'S WORKERS' COMPENSATION ACT PREEMPTION**

Defendants argue that plaintiff's IIED claim against Teves cannot be heard in federal court because it is preempted by the California Workers' Compensation Act. In particular, defendants contend that the claim against Teves is barred because it is based solely on alleged personnel-management activity (Opp. 7). As a general rule, the Act provides the exclusive remedy against employers for all injuries arising out of and in the course of employment. Cal. Labor Code §§ 3600, 3602; *see also Livitsanos v. Super. Ct.*, 2 Cal. 4th 744, 752–53 (1992).

3

Defendants are correct that the mere allegation of intentional, outrageous, or even malicious conduct is insufficient to avoid the exclusive workers' compensation remedy.

Defendants ignore an important caveat to the Act's preemption rule, however. The Act will not preempt an employee's IIED claim where an employer's conduct contravenes fundamental public policy. *Livitsanos*, 2 Cal. 4th at 754. An employer's decision to discharge an employee in violation of fundamental policy cannot be considered a normal part of the employment relationship, and does not fall within the purview of the Act. *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1100 (1992). In particular, a public policy is fundamental if it has a basis in constitutional or statutory provisions including the California Code. *Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir. 1994). In *Cabesuela v. Browning-Ferris Indus.*, 68 Cal. App. 4th 101, 113 (Cal. Ct. App. 1998), the Court of Appeal held that a defendant violated a public policy when he retaliated against an employee who had reported a health code violation, as codified at Labor Code § 6310.

As did the plaintiff in *Cabesuela*, plaintiff here argues that Labor Code § 6310 codifies the state's fundamental public policy prohibiting an employer from discriminating against an employee for making a health or safety complaint. This order agrees. Labor Code § 6310 provides that "[n]o person shall discharge or in any manner discriminate against any employee because the employee has . . . [m]ade any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative." While plaintiff in the instant matter reported the violation to hotel management rather than a government agency, the principle behind the fundamental public policy remains the same: retaliation against workers who report violations of health and safety rules is unacceptable.

Defendants present two primary arguments against individual supervisor liability for Teves. *First*, defendants argue that *Cabesuela* does not apply to this matter because that case focused on the liability of an *employer* for wrongful termination in violation of public policy, not the liability of an *individual manager*. While defendants are correct in this distinction, a central question in *Cabesuela* was whether the misconduct was a normal part of the

4

employment relationship, not who was liable. In fact, *Cabesuela* reversed a demurrer in favor of two defendants, one of whom was an individual supervisor, not the employer itself.

*Second*, defendants argue that plaintiff's claim against Teves is preempted because a court of appeal sustained a demurrer to an IIED claim on similar grounds in *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 576–77 (Cal. Ct. App. 1998). That case is distinguishable because the court found that plaintiff's IIED claim relied exclusively upon the success of his wrongful termination claim (which failed). Here, plaintiff brings no charges against Teves for retaliatory discharge, and Teves' other disciplinary actions towards plaintiff may constitute outrageous conduct, independently of the wrongful termination claim against the corporate defendants.

In any event, the conclusion that an employee may never bring a claim against an individual manager for IIED because defendant cannot be held liable for wrongful discharge is not settled California law. Notwithstanding *Phillips*, a long line of decisions have held individual managers, as well as employers, liable for IIED. *See Colunga v. Dobbs Int'l Servs., Inc.*, No C 00-03957 WHA (Jan. 2, 2001) (citing *Cabesuela*, 68 Cal. App. 4th at 101; *Accardi v. Super. Ct.*, 17 Cal. App. 4th 341 (Cal. Ct. App. 1993); *Agarwal v. Johnson*, 25 Cal. 3d 932 (1979); *Alcorn v. Anbro Eng'g*, 2 Cal. 3d 493 (1970)). As a result, even if defendants' legal argument is sound, defendants have not met their burden for fraudulent joinder because the law is not *clearly settled* in this area.

### 2. FAILURE TO STATE AN IIED CLAIM

Defendants also argue that plaintiff fails to state a claim for intentional inflection of emotional distress, and therefore, that non-diverse defendant Teves should be ignored and the motion for remand denied. In order to state a cause of action for IIED, a plaintiff must demonstrate four elements: (1) extreme and outrageous conduct by the defendant; (2) defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883–84 (Cal. Ct. App. 1989).

5

Defendants contend that plaintiff fails to state an IIED claim because Teves' actions were within the realm of standard personnel-management and therefore do not support the first element of IIED: extreme and outrageous conduct. In particular, they argue that the facts of this matter can be properly analogized to those in *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 79 (Cal. Ct. App. 1996). *Janken* held that the complaint in that action failed to plead facts that, if true, could support an IIED claim. The court explained that all actions alleged, from altered performance appraisals, demotions and terminations, or failure to provide work assignments, were "within the realm of properly delegated personnel management authority." *Ibid*. The personnel-management actions would have been unlawful only if motivated by prohibited discriminatory considerations.

Not true here. In the instant matter, Teves' alleged actions would have been unlawful even without discriminatory motive. As noted in *Cabesuela*, conduct contrary to the public policy and embodied by Labor Code § 6310 *can* support an IIED claim. *Cabesuela*, 68 Cal. App. 4th at 112. "Behavior may be considered outrageous, [and sufficient to sustain an IIED claim,] if a defendant abuses a relation or position which gives him power to damage the plaintiff's interest." *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979). Furthermore, abusing a position of power to compel an employee to work under conditions that violate health and safety regulations mandated by law may be beyond the bounds of what should be tolerated in a civilized society. The decisions cited by defendants are distinguishable from this action precisely because they either did not involve actions violating a fundamental public policy or because no abuse of power was apparent. *See, e.g., Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (no outrageous behavior when plaintiff was twice yelled at for mistakes she did not feel she was responsible for and no fundamental public policy violated); *King v. AC&R Adver.*, 65 F.3d 764, 769–70 (9th Cir. 1995) (no abuse of power when high business executive resigned from his employment).

Finally, even if Teves' behavior was not clearly outrageous, it cannot be said that after resolving any doubt as to removability in favor of remand, the charges against Teves fail to state a claim. "Whether . . . alleged behavior is sufficiently extreme as to constitute 'outrageous'

6

behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment." *Angie M. v. Super. Ct.*, 37 Cal. App. 4th 1217, 1226 (Cal. Ct. App. 1995).  Defendants have not met their burden of demonstrating that plaintiff cannot sustain an IIED claim against Teves under well-settled state law.  Plaintiff's motion for remand is therefore **GRANTED**.

## CONCLUSION

Defendants have not established fraudulent joinder.  Accordingly, the Court lacks subject-matter jurisdiction and plaintiff's motion for remand is **GRANTED**.  The Clerk shall remand this entire action to the Superior Court of California for San Mateo County.

**IT IS SO ORDERED.**

Dated: July 21, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE